# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| COLLEEN JOHNSON, individually and COLLEEN JOHNSON, as personal representative of the estate of Mark Johnson,<br><br>Plaintiffs,<br><br>v.<br><br>THE GENERAL AMERICAN LIFE INSURANCE COMPANY and METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. 18-CV-1668 (NEB/TNL)<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Mark Johnson's life insurance policy with The General American Life Insurance Company ("General American") lapsed after he failed to pay premiums. His widow, Colleen Johnson, individually and as personal representative of the estate of Mr. Johnson, now seeks to collect on the policy. Ms. Johnson argues that General American improperly cancelled the policy, that some of the statements by General American were fraudulent, and that co-defendant Metropolitan Life Insurance Company is vicariously liable for the actions of General American. The Court finds no genuine dispute as to any material fact and grants the defendants summary judgment on the claims asserted against them.

## BACKGROUND

The Court draws the following background from the summary judgment record, drawing all reasonable inferences in favor of Ms. Johnson. *See Schiff v. Eli Lilly & Co*, 687 F.3d 947, 948 (8th Cir. 2012). In 2003, General American issued a universal life insurance policy to Mr. Johnson. [ECF No. 34-1, Ex. 1 ("Policy") at 4.][1] Universal life insurance policies provide a policyholder with two main benefits: long-term life insurance and a savings account. (*See generally* Policy.) When a policyholder like Mr. Johnson pays the premium on a policy, part of the premium goes toward the cost of insurance. The other part of the premium goes to a savings account, and the amount in the savings account is considered the cash value of the policy. [*See* Policy at 18, ECF No. 54-1 ("Teal Dep. I") 46:13–19.] Under the terms of the policy, if a policyholder stops paying premiums, General American will deduct the cost of insurance from the cash value so that coverage will continue. (Policy at 22.) General American will continue this practice until the cash value (less a surrender charge) is insufficient to cover the cost of insurance. (*Id.* at 20–22.) Once the cash value is depleted, General American will send policyholders a notice that if they do not pay their premiums, their policy will lapse. (*Id.* at 16.)

This case followed that exact pattern. In June 2009, as was permitted by the Policy, Mr. Johnson stopped paying premiums. [ECF No. 34 ("Ranieri Decl.") ¶ 5.] General

---

[1] The exhibits in ECF No. 34-1 are not paginated, so the Court will use the ECF pagination for ECF No. 34-1 when referring to these exhibits.

2

American deducted the cost of insurance from the cash value of his Policy, which at the time was over $43,000. [*Id.*, ECF No. 54-2 ("Teal Dep. II") 145:3–15.] This arrangement continued until 2015. In July 2015, the cash value of the Policy was $6,315.81 and the surrender charge was $4,806.00. [ECF No 34-1, Ex. 3 ("Annual Statement") at 51.] This left $1,509.81, which would not cover the cost of insurance for another year. (*Id.*) All of this information was reflected on the 2015 Annual Statement that General American sent to Mr. Johnson. The Annual Statement also included the following language:

> If you continue to pay your planned premium of $1,581.00 Quarterly
> - Under guaranteed assumptions your policy will not lapse this year.
> - Under current assumptions your policy will not lapse this year.
> 
> If you pay no more premiums your coverage continuation benefit will keep your policy in force for 0 years. . . .
> 
> **No-Lapse Guarantee**
> The no-lapse guarantee is not in effect at this time

(*Id.* at 52.) It is undisputed that Mr. Johnson received this statement.

Because the cash value was insufficient, on January 19, 2016, General American sent Mr. Johnson a "Notice of Payment Due" for his quarterly premium of $1,581.00. [Ranieri Decl. ¶ 14; ECF No. 34-1, Ex. 4 at 56.] It is undisputed that Mr. Johnson received this notice but did not pay the premium. After the cost of insurance was deducted in February, the cash value of the Policy was $163.75, which was then insufficient to cover the cost of insurance for March. (Ranieri Decl. ¶ 16.) General American then sent an autogenerated grace period notice in March that stated in relevant part:

> The cash value of your Universal Life policy is not sufficient to cover the monthly deduction/loan interest now due. The amount listed on this notice will cover the monthly deductions until: 05/08/2016
> Your coverage will terminate unless we receive the required payment by 05/09/2016

[ECF No. 34-1, Ex. 5 ("Grace Period Notice") at 59.] The notice was sent with postage prepaid via the United States Postal Service to the Johnsons' last known address. (Ranieri Decl. ¶¶ 17–19.) Ms. Johnson does not dispute that General American sent this notice, but she has not found it in Mr. Johnson's files, and so she argues he did not receive it. [ECF No. 54-3 ("Colleen Johnson Dep.") 48:12–25 (testifying that she has not found the Grace Period Notice, but has no reason to dispute that the notice was sent).] Regardless, General American did not receive any payment and deemed the Policy lapsed as of May 13, 2016. (Ranieri Decl. ¶ 20.) A few days later, General American sent Mr. Johnson a letter notifying him that the Policy had lapsed on May 13th. [*Id.* ¶ 21, ECF No. 34-1, Ex. 6 at 62.] This letter was sent to the same address as the Grace Period Notice, and it is undisputed that Mr. Johnson received it. (*See* Ranieri Decl. ¶¶ 17–21.)

Approximately two months later, in July, Mr. Johnson was diagnosed with cancer. (Colleen Johnson Dep. at 38:21–39:11.) Days after his diagnosis, he called his financial planner and former life insurance representative, Dale Teal. (Teal Dep. I 54:22–55:19.) Teal had worked for General American, and while working there he sold Mr. Johnson the Policy. (*See id.* 17:16–22, 75.) When Teal left General American, he no longer oversaw Mr.

Johnson's insurance policy, but continued to oversee Mr. Johnson's investments. (*See id.* 17:16–22, 22:25–23:11, 75, 82.)

During the July call, Mr. Johnson told Teal that his life insurance had recently lapsed. (*Id.* 56:18–57:15.) As a favor to Mr. Johnson, Teal and his secretary called General American about the Policy. (Teal Dep. II 124:19–129:9, 131:19–139:2.) A representative for General American informed them that the Policy lapsed in May, and that General American sent several notices to Mr. Johnson, including the Grace Period Notice. [Teal Dep. II 127:17–129:1.]

Mr. Johnson died the next month. (Colleen Johnson Dep. 37:21–38:2.) It was not until Ms. Johnson tried to collect on the Policy that she learned it lapsed. (*Id.* 38:3–20.) Ms. Johnson was not involved in overseeing the Policy; when she saw notices about it in the mail, she would set them aside for her husband. (*Id.* 19:22–25, 20:17–21:10, 31:1–33:25.) In keeping with this practice, Ms. Johnson never opened or read any notices about the Policy prior to Mr. Johnson's death. (*Id.* 33:11–34:20.)

Ms. Johnson now sues to enforce the Policy. She argues that General American breached its contract by failing to provide prior notice of the lapse, and that General American made fraudulent statements in its Annual Statement. Against co-defendant Metropolitan Life, she sues for vicarious liability.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013). "The burden of demonstrating an absence of genuine dispute of material fact is on the moving party." *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). "If the movant does so, the nonmovant must respond by submitting materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

# ANALYSIS

## I. Breach of Contract

General American argues that Ms. Johnson cannot prevail on her breach of contract claim. The parties do not dispute that Minnesota law governs Ms. Johnson's state law claims. Under Minnesota law, a breach of contract claim requires proof of a contract, performance of any condition precedent by the plaintiff, a material breach of the contract by the defendant, and damages. *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000). Under general contract principles, the language of the contract controls unless it is ambiguous. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Thus, the Court turns to the Policy, which provides that if there are insufficient funds to cover the next payment due, a grace period notice "will be sent at the beginning of the grace period to your last known address . . . . If we do not receive this amount by the end of the grace period, your policy will lapse at the end of that 62-day period and it will then terminate without cash surrender value." (Policy at 16.)

Ms. Johnson's argument under this contract language appears to be that Mr. Johnson did not receive the Grace Period Notice, and thus cancellation of the policy was a breach. The undisputed record shows that Mr. Johnson did indeed receive the Grace Period Notice. On this issue, the law begins with a presumption: "In the absence of proof to the contrary, proof that a letter or other mail matter has been properly addressed,

7

stamped, and mailed raises a presumption that it has been received by the addressee." 31 C.J.S. Evidence § 234; *accord Nemo v. Local Joint Exec. Bd. & Hotel & Rest. Emps.' Local No. 556*, 35 N.W.2d 337, 339 (Minn. 1948). There is no dispute that General American sent the Grace Period Notice to the Johnsons' last known address with postage prepaid. (Ranieri Decl. ¶¶ 17–19.) General American also established that Mr. Johnson received at least three notices from General American about the Policy: the 2015 Annual Statement sent in the summer of 2015; the Notice of Payment Due sent in January 2016; and the Notice of Lapse sent in May 2016. (Ranieri Decl. ¶¶ 9, 14, 21.) All three notices were sent to the same address as the Grace Period Notice. (*See id.* ¶¶ 9, 14, 17, 21.) Further, Ms. Johnson, by her own testimony, has no idea whether the notice was received, because she did not keep abreast of the couple's insurance policies. (Colleen Johnson Dep. 19:22–25, 20:17–21:10, 31:1–33:25.) Finally, Dale Teal testified that there is no reason to doubt the Grace Period Notice was mailed by General American and received by Mr. Johnson. (Teal Dep. I at 57; Teal Dep. II at 106:3–107:3, 130:10–14.)

Ms. Johnson has not provided any evidence to negate the presumption that her husband received the notice. Instead, she offers a self-serving argument, supporting it with portions of Teal's testimony taken out of context. For example, she contends that "Mr. Teal specifically recalls that Mr. Johnson said he never received any grace period notice." [ECF No. 41 ("Pl. Br.") at 7 (citing Teal Dep. II at 116).] In that portion of the

deposition, Teal admits the opposite—that he did not know what specific notices Mr. Johnson received from General American. (Teal Dep. II at 115–16.)

As another example, Ms. Johnson argues that "[t]here is no dispute that there is zero evidence Mark Johnson ever received a grace period [notice] from the Defendants." (Pl. Br. at 9.) This assertion is contradicted by the undisputed record. Teal testified that Mr. Johnson told him that he had received a "late premium notice" and then later received the "lapse notice." (Teal Dep. I at 56:18–57:15.) Because none of the letters sent by General American were titled "late premium notice," Teal later clarified that the "grace period probably was the letter." (Teal Dep. II at 106.) The statements allegedly made by Mr. Johnson to Teal would be inadmissible hearsay at trial and therefore cannot be relied on to resist summary judgment. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) ("[I]nadmissible hearsay evidence cannot be considered at the summary judgment stage.") Even if the statements were admissible, Ms. Johnson's recitation of the record is erroneous. Teal's testimony demonstrates that there is no reason to question that Mr. Johnson received the Grace Period Notice. (*See* Teal Dep. I at 56:18–57:15; Teal Dep. II at 106, 130:4–9 ("Q: And you don't have any reason to doubt or disagree that the grace period notice was, in fact, sent to the insured, Mark Johnson, on March 8, 2016. Is that correct? A: Correct.").) Thus, the Court finds that there is no dispute as to the material facts, and the defendants are entitled to summary judgment on Ms. Johnson's breach of contract claim.

II. **Consumer Fraud**

General American next argues that Ms. Johnson cannot prove her claim under the Consumer Fraud Act, Minn. Stat. §§ 325F.68–325F.70, and it is entitled to summary judgment on this claim. To prevail on a consumer fraud claim, Ms. Johnson must show that General American made a fraudulent statement in connection with the sale of merchandise, and it intended Mr. Johnson to rely on the statement. Minn. Stat § 325F.69 subd. 1. The parties agree that insurance policies are considered merchandise under the consumer fraud act. *Parkhill v. Minn. Mut. Life Ins. Co.*, 995 F. Supp. 983, 999 (D. Minn. 1998). Ms. Johnson argues that General American made two misrepresentations in its Annual Statement to Mr. Johnson.[2] The first statement reads "[u]nder current assumptions your policy will not lapse this year[.]" (Annual Statement at 52.) The second reads "No-Lapse Guarantee." (*Id.* (emphasis omitted).) Ms. Johnson argues that the statements are misleading because they indicate that the Policy will not lapse this year, and that a policyholder would rely on these statements and not pay premiums. True, if this was all the Annual Statement said, the statements could be considered misleading.

---

[2] Ms. Johnson also argues in her briefs that General American made other, various misrepresentations. But the complaint specifically and exclusively identifies the two statements in the Annual Statement as misrepresentations. [ECF No. 1 ("Compl.") ¶¶ 17, 48–49.] The Court will not allow Ms. Johnson to raise new issues to avoid summary judgment, and thus, does not consider these other statements. "[The Federal Rules] do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power. Co v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).

But again, the identified statements are not an accurate representation of the record. In context, the statements read:

> If you continue to pay your planned premium of $1,581.00 Quarterly
> - Under guaranteed assumptions your policy will not lapse this year.
> - Under current assumptions your policy will not lapse this year.
>
> If you pay no more premiums your coverage continuation benefit will keep your policy in force for 0 years.
>
> **No-Lapse Guarantee**
> The no-lapse guarantee is not in effect at this time

(Annual Statement at 52.) The Annual Statement clearly conveys that the Policy will not last another year unless the policyholder takes action.

Ms. Johnson also argues that the Annual Statement should have indicated that Mr. Johnson needed to start paying the cost of insurance, not the premium, because he had not paid a premium in seven years. This argument has no legal significance. It may be true, as Ms. Johnson asserts, that Mr. Johnson did not understand that the statement was notifying him of the need to start making payments of the cost of insurance. But his alleged misunderstanding (without evidentiary support) does not create a genuine issue of material fact as to whether the statements were fraudulent. Because none of the statements alleged are fraudulent or misleading, General American is entitled to summary judgment on this claim.[3]

---

[3] Because the Court determines that there are no actionable statements under the Consumer Fraud Act, Minn. Stat. § 325F.69, it does not reach the defendants' alternative argument that the claim does not provide a public benefit under the Private Attorney General Statute, Minn. Stat. § 8.31 subd. 3a. *See Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000)

### III. Vicarious Liability

Metropolitan Life Insurance Company argues that it is entitled to summary judgment on the "vicarious liability" claim against it because General American is not its agent. A principal is liable for the acts of its agents if the acts are committed in the scope of the agents' authority or employment. *A.P.I., Inc. Asbestos Settlement Tr. v. Home Ins. Co.*, 877 F. Supp. 2d 709, 722 (D. Minn. 2012). As the defendants' Rule 7.1 disclosures state, both companies are subsidiaries of MetLife, Inc. [ECF Nos. 25, 26.] There is no evidence that General American is an agent of Metropolitan Life Insurance Company. Metropolitan Life Insurance Company did not underwrite or issue the life insurance policy at issue, it is not liable for any benefits due under the Policy, and is not named as a party to the Policy. (*See* Teal Dep. I 77:5–22; Ranieri Decl. ¶ 23 ("Metropolitan Life Insurance Company did not underwrite or issue the Policy.").) Because there is no genuine dispute that General American was not acting as an agent of Metropolitan Life Insurance Company in its dealings with the plaintiff, Metropolitan Life Insurance Company is entitled to summary judgment on all claims against it.

### IV. Plausibly Noticed Claim

Ms. Johnson also asserted a claim for "all other plausibly noticed claims." (Compl. 57–58.) At the hearing, plaintiff's counsel conceded that the defendants were entitled to summary judgment on this claim, and the Court grants summary judgment for the defendants.

12

## V. Declaratory Judgment

Finally, the complaint includes a claim for declaratory judgment, requesting a declaration that the Policy is still valid and enforceable. (Compl. ¶ 61.) The defendants argue that this claim is duplicative of Ms. Johnson's prior claims. The relief requested for this claim would have the same effect as a judgment on the merits of her other claims; as such, it is properly dismissed. *MASTR Asset Backed Securities Trust 2006-HE3 ex rel. U.S. Bank Nat'l Assoc. v. WMC Mortgage Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. 2012) (dismissing a declaratory judgment request because asking for a declaration that the contract was breached was duplicative of a breach of contract claim). Thus, the defendants are entitled to summary judgment on the declaratory judgment claim.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [ECF No. 31] is GRANTED; and
2. Plaintiff's claims are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 11, 2020                      BY THE COURT:

                                                    s/Nancy E. Brasel
                                                    Nancy E. Brasel
                                                    United States District Judge